UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| STEVEN G. BODNAR, <br><br> Plaintiff, <br><br> v. <br><br> LAKE COUNTY JAIL, et al., <br><br> Defendants. | CAUSE NO. 2:20-CV-157-PPS-APR |

OPINION AND ORDER

Steven G. Bodnar, a prisoner without a lawyer housed at the Lake County Jail, filed a document titled as a "Motion to File Complaint / Possible Personal Injury Suit / Mistreatment of Inmates Per Covid-19 – Corona Virus Outbreak 2020." ECF 1. I will construe the motion as a complaint. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Bodnar has been an inmate at the Lake County Jail since November 1, 2019. He brings this action against Sheriff Oscar Martinez, Warden Zenk and several other employees of the Lake County Jail relating to the conditions of his confinement. Before diving into the merits of the allegations, there is a preliminary issue to address: Bodnar

lists only himself as a plaintiff in the caption of his complaint, but in the body of the complaint he indicates that he wishes to include several other individuals as plaintiffs. ECF 1 at 5. As a *pro se* litigant, Bodnar cannot represent other inmates or bring claims on their behalf. *See In re IFC Credit Corp.*, 663 F.3d 315, 318 (7th Cir. 2011) ("[I]ndividuals are permitted to litigate pro se, though not to represent other litigants"). So the claims of the other plaintiffs will be dismissed.

Bodnar says that he is fearful that he will contract COVID-19 as an inmate at the jail and believes that jail staff have not taken adequate measures to protect him. It is unclear if Bodnar is a pre-trial detainee or is instead serving a sentence following conviction. For purposes of this order, I will presume that Bodnar is a pre-trial detainee. "In evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, "[i]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment'." *Bell*, 441 U.S. at 539. Nevertheless, in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Kingsley v. Hendrickson*, 576 U.S. _, _; 135 S.Ct. 2466, 2473 (2015) (quoting *Bell*).

The COVID-19 pandemic has taken the world by storm. It has disrupted the way we live in ways we could not have imagined just a few weeks ago. The effects of the

pandemic have been especially pronounced in jails. What we know about the virus is limited, and guidelines for preventing transmission are still being developed. The Center for Disease Control has issued guidance for management of the pandemic in correctional settings based on what was known about the virus on March 23, 2020. https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Apr. 17, 2020). Our understanding of what is appropriate will almost certainly evolve, but at the moment, the CDC's guidelines seem a reasonable starting place in assessing whether the conditions that Bodnar has described at the Lake County Jail are unconstitutional.

The initial question is whether, when screening a *pro se* complaint, I can even look to the CDC website for guidance in judging the reasonableness of the actions being taken by officials at the Lake County Jail. It appears well established that I can. *See* Fed. R. Evid. 201; *Pickett v. Sheridan Health*, 664 F.3d 632, 648 (7th Cir. 2011); (taking judicial notice of information on official government website is appropriate); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (same); *Laborers' Pension Fund v. Blackmore Sewer Constr. Co.*, 298 F.3d 600, 607 (7th Cir. 2002 )(same); *Henson v. CSC Credit*, 29 F.3d 280, 284 (7th Cir . 1994); *Outley v. City of Chicago*, 407 F.Supp.3d 752, 767 (N.D. Ill. 2019) (judicial notice taken of government website at motion to dismiss stage of the proceedings); *Betz v. Greenville Correctional Inst.* 2014 WL 812403 (S.D. Ill. 2014) (same). I will therefore take judicial notice of the CDC's guidelines for managing COVID-19 in correctional settings.

Bodnar believes that he should be provided with adequate personal protective equipment. Yet he admits that he was provided with a mask on April 11, 2020. His

3

complaint is that the mask he was provided with is not of the quality used by medical staff or even the defendants. The CDC has recommended that "[i]ncarcerated/detained individuals with COVID-19 symptoms should wear a face mask and should be placed under medical isolation immediately." *Id*. However, the CDC's recommendations do not include the routine wearing of face masks by asymptomatic inmates. Our understanding of whether a facemask should be worn has, however, shifted, and it is now recommended that everyone wear masks when outside their homes. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html (last visited April 17, 2020). However, the CDC is recommending cloth face masks to preserve medical grade equipment for medical personnel. *Id.* (**"**The cloth face coverings recommended are not surgical masks or N-95 respirators. Those are critical supplies that must continue to be reserved for healthcare workers and other medical first responders, as recommended by current CDC guidance.") Thus, while Bodnar may prefer medical grade equipment to better protect himself, the decision to provide him with a lesser quality mask is consistent with current guidelines and in no way runs afoul of the Constitution.

Bodnar also alleges that food and medicine is transported in open containers, increasing the risk of the virus spreading. The CDC has recommended that good hygiene, and specifically hand hygiene, as well as cough etiquette should be reinforced in institutional settings. *Id.* The CDC has also recommended that food be served to infected inmates and those suspected of being infected in their housing unit, when possible, to reduce the risk of spreading the virus to others. *Id.* But it has not

4

recommended that either food or medication be delivered in closed containers, and the failure to do so simply does not run afoul of the Constitution.

Bodnar indicates that his unit has been on quarantine or lockdown repeatedly, and when on lockdown, he cannot order or receive commissary items, including the hygiene items he needs to keep himself and his clothes clean. He has been provided with one 1.25 oz bar of soap and one roll of toilet paper per week, but he says this is insufficient. The CDC has recommended no-cost access to soap, and it has expressed a preference for liquid soap. Here, the facility has provided Bodnar with no-cost soap. While Bodnar may prefer access to more soap and toilet paper, the facts do not suggest that these measures are designed to punish, and these limitations do not rise to the level of a constitutional violation.

When on lockdown Bodnar complains that he cannot obtain legal materials to keep in contact with his lawyer. But Bodnar is represented by counsel, so jail officials are not required to provide him with legal materials. *See Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988). And while he claims he has not been able to keep in contact with his lawyer, he admits that he is permitted one hour out of his cell to shower and make calls. Furthermore, he has been able to send mail to the court and presumably can send mail to his attorney as well.

There is another matter relating to the quarantine at the Lake County Jail. Bodnar seems to want to have it both ways. On the one hand, Bodnar complains about the restrictions placed on him due to quarantine; yet he also complains that the quarantine is insufficient to protect him from COVID-19 because staff and other inmates

5

are moving about the housing unit constantly. New inmates have allegedly been brought into the unit without first being quarantined or tested for COVID-19. Staff must move throughout the unit to ensure the safety of inmates and meet their basic needs. While this increases the risk of exposure to both staff and inmates, it is unavoidable. The CDC has recommended that new arrivals be screened for COVID-19 and, where possible, held in a separate space for fourteen days before being placed with other inmates. https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Apr. 17, 2020) ("If possible, consider quarantining all new intakes for 14 days before they enter the facility's general population (SEPARATELY from other individuals who are quarantined due to contact with a COVID-19 case)."). While comingling new intakes with other inmates may not be the ideal practice (and may not even be occurring at the Lake County Jail), the challenges of managing this situation in a correctional setting are astronomical, and nothing in Bodnar's complaint suggests that the defendants acted unreasonably.

Bodnar complains that he has not been tested for COVID-19 and has not even been offered a test. Testing is in short supply and is difficult to get even for those not incarcerated. Bodnar does not allege that he has symptoms of COVID-19 and does not allege that he has been exposed to someone who has COVID-19 or even symptoms of COVID-19. The failure of the defendants to offer Bodnar a test for COVID-19 when he is asymptomatic in no way implicates the Constitution.

In short, I cannot find that any of the conditions or restrictions that Bodnar describes are unreasonable in light of the COVID-19 pandemic. The conditions and

restrictions that he has described are "rationally related to a legitimate nonpunitive governmental purpose" and are not "excessive in relation to that purpose." *Kingsley*, 576 U.S. _, _; 135 S.Ct. 2466, 2473 (2015) (quoting *Bell*). Thus, I cannot permit him to proceed on these claims.

One other matter: Bodnar seeks only monetary damages. Even if Bodnar had stated a claim, it is unclear how he has been damaged. It appears that he is alleging only that he suffers *potential* future harm. But compensatory damages can only be awarded where a plaintiff suffers an actual injury. *See Horina v. City of Granite City, Ill.*, 538 F.3d 624, 637 (7th Cir. 2008).

While it seems unlikely that Bodnar will be able to state a claim, given the facts presented in his complaint, he will nonetheless be granted an opportunity to amend his complaint if, after reviewing this my order, he believes that he can plausibly state a claim. *See Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013). If Bodnar decides to file an amended complaint, he should explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured by the events that transpired, providing as much detail as possible. Bodnar should also make it clear whether he is a pretrial detainee or has been convicted of an offense and is serving a sentence.

Finally, Bodnar has also provided an address other than the Lake County Jail in hopes that he will be released soon. Bodnar's current address is the Lake County Jail. When he is released, it is his obligation to report a change of address to the court.

For these reasons, the court:

(1) DIRECTS the clerk to put this case number on a blank Prisoner Complaint form, Pro Se 14 (INND Rev. 2/20), and send it to Steven G. Bodnar;

(2) GRANTS Steven G. Bodnar until May 22, 2020, to file an amended complaint; and

(3) CAUTIONS Steven G. Bodnar, that, if he does not respond by that deadline, his case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on April 22, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT